Credit Managers Association of Northern and Central California, a Corporation v. Commissioner.
Credit Managers Assn. of Northern & Cent. California v. Commissioner
Docket No. 2381.
United States Tax Court
1944 Tax Ct. Memo LEXIS 281; 3 T.C.M. (CCH) 385; T.C.M. (RIA) 44127; April 21, 1944
*281 J. W. Paramore, Esq., 315 Montgomery St., San Francisco, Calif., for the petitioner. H. R. Horrow, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income taxes and delinquency penalties for the taxable years ending April 30, 1940 and April 30, 1941, as follows: Year
Income Tax
Penalty
April 30, 1940
$350.32
$87.58
April 30, 1941
311.39
31.14 The sole question presented is whether the petitioner is exempt from tax as a business league, within the provisions of section 101 (7) of the Internal Revenue Code. Findings of Fact The petitioner, the Credit Managers Association of Northern and Central California, successor to an incorporated association of the same name, is a corporation organized September 20, 1938, under the laws of the State of California with its principal office at 333 Montgomery Street, San Francisco, California. It filed its income tax returns for the periods here involved with the Collector of Internal Revenue for the first district of California. The purposes of the corporation are set forth in Article II of the Articles of Incorporation as follows: "The purposes for which it *282 is formed are protective as well as educational, i.e., to develop and combine the intelligence of its members for their mutual protection against imposition, injustice and fraud; to establish more firmly the basis upon which credit in every branch of commercial enterprise may be founded, which shall include demand for the reform of laws, Federal and State, unfavorable to honest debtors and creditors, and the enactment of laws beneficial to commerce throughout the United States; to improve existing methods for the dissemination of credit information to its members; to gather and disseminate to its members data in relation to the subject of credit; to improve business customs whereby commercial interests and particularly the commercial interests of its members may be benefited, and the welfare of all advanced; to establish Bureaus of Education, Ledger Interchange, Fraud Prevention and such other Bureaus as may from time to time appear to be in the best interests of its members and in furtherance of the objects of its members and in furtherance of the objects and purposes herein enumerated, and to perform such other kindred lines of work as the members of this Association may from time *283 to time determine upon, with the idea of bringing about mutual improvements and greater similarity and certainty in business customs and usages of trade, and to establish closer credit co-operation among its members. "The corporation does not contemplate pecuniary gain or profit to the members thereof, and no part of its net earnings, if any, shall enure to the benefit of any member or individual." The corporation has no stockholders. Under the by-laws membership is open "to any and all firms, manufacturers, and wholesalers, corporations, banks, and individuals engaged in any legitimate line of business where credit is granted." Prospective members are required to make application to the secretary-manager, whereupon the application is voted upon by a membership committee. Pursuant to the by-laws members pay an initiation fee of $10 and dues of $36 per annum. During the taxable year ended April 30, 1940 dues received by the petitioner amounted to $23,851 out of a total revenue of $94,540.14. During the taxable year ended April 30, 1941 dues amounted to $25,783.50 out of a total revenue of $90,423.46. The principal activity of the petitioner is the operation of a credit interchange *284 bureau. Any member was entitled to obtain the service of this bureau by entering into a subscriber's agreement providing for the payment of fixed fees for a given number of credit reports and an additional fee for excess reports. The method of operation of the interchange bureau was as follows: The subscriber desiring information as to the credit rating of a customer or prospective customer called on the bureau for a credit report and accompanied his request with a statement of his own ledger experience with the customer or the amount of the initial credit sought by him. Thereupon, the petitioner circulated a form to all members disclosed by its file as dealing with the account and their experience with that account. The information gathered in this manner consisted of a statement of the highest recent credit given, the amount presently owing, the amount past due, the terms of sale, and whether the customer pays on time, is slow, or seeks discounts. There was also space for additional information under remarks. Upon receipt of this information, which the subscribers were by contract required to furnish, the petitioner compiled a single report and forwarded it to the inquiring subscriber, *285 keeping the permanent copy for its own files. Such reports were supplied only to a firm that had extended or was extending credit on the account in question. This service was occasionally furnished nonsubscribing members as a courtesy and also as an accommodation occasionally to nonmembers without charge in exchange for their own ledger experience with the account. In the taxable years here involved subscriptions for this service accounted for revenue in the sum of $48,855.65 for the fiscal year 1940 and $43,307.54 for the fiscal year 1941. Excess credit reports during the fiscal year ending 1941 accounted for earnings in the amount of $2,863.69. The subscription charge for the interchange service was fixed at a figure designed to cover the cost of operation of the bureau. At times the cost was understimated and was not sufficient to cover the cost. If in any given year the amount charged proved to be in excess of the cost of operations for that year the excess would be used to improve the service or else would be refunded to the members. During the years 1940 and 1941 twelve or fourteen out of a total of twenty-seven employees were engaged in the work of this department. Occasionally *286 the petitioner purchased for its members credit reports furnished by companies engaged in the business of reporting on the credit of individuals; the members were not charged for this service. Prior to July 11, 1939 the petitioner, through a collection division, was engaged in the collection of accounts receivable for its members, charging normal collection agency rates for this service. For the year ended April 30, 1939 the amount received for such service was $16,263.37 and for the year ended April 30, 1940, $3,832.79. On July 11, 1939 this business and the equipment used therein were transferred to Credit Managers Collection Bureau, a separate nonstock corporation organized for the purpose on that date. The manager of the Collection Bureau was an employee of the petitioner and the two corporations had mutual directors. All of the members of the Collection Bureau were also members of the petitioner. The Collection Bureau's method of operation is to collect claims for members and nonmembers alike. In the year ended April 30, 1940 the petitioner realized $1,658.75 for services of an undisclosed nature rendered the Collection Bureau and in the following year received the amount of *287 $2,356.25. The petitioner maintained a business service committee, which furnished advisory assistance to delinquent debtors of members of petitioner to the end that they might find some way of working out of their financial difficulties. No charge was made for this service. The petitioner also maintains a Construction Industries Credit Bureau which supplies a reporting service on construction jobs and the contractors. The reports contain information as to the size of the contract, the nature of the work to be performed, and other pertinent information. Members electing to take this service pay an additional fee of $5 monthly. During the year ended Apri 30, 1940 the revenue from the Construction Industries Bureau was $5,974.70 and for the year ended April 30, 1941, $5,980.75. The petitioner also sponsored two courses on credit management each year, which courses were conducted by the University Extension Division of the University of California. These courses were open to the general public. The petitioner informed its members of the courses, registered students, and accepted a registration fee of $2 for the National Institute of Credit. The fees for the course are paid to the *288 University occasionally through the petitioner. For the year ended April 30, 1940 the petitioner received $77.30 in connection with its educational work and in the following year $216. During the same years the amounts disbursed for this work were $477.57 and $188.42. Further activities of the petitioner included the printing and distribution each year of a code of ethics formulated by a national association of which it was a member; the publishing of a monthly bulletin concerning credit conditions; promoting monthly discussions on subjects of credit; the collection of statistics for the Department of Commerce; studying and acting on proposed legislation affecting credit; investigating fraudulent practices affecting credit; and the maintaining of credit groups designed to study the credit problems of particular industries. With the exception of the secretary-manager, no officer, director, or committee member receives any salary or compensation for his services. The petitioner during the periods involved was not a business league within the meaning of section 101(7) of the Internal Revenue Code. Opinion ARUNDELL, Judge: The sole question is whether the petitioner was a business *289 league within the provisions of section 101 (7) of the Internal Revenue Code[1] and thus exempt from taxation. The petitioner does not contest the correctness of the penalties apart from the exemption. We think it can no longer be questioned that provisions granting tax exemption must be strictly construed, Helvering v. Northwest Steel Rolling Mills, Inc., 311 U.S. 46, and any doubt must be resolved in favor of the taxing powers. Retailers Credit Association of Alameda County v. Commissioner, 90 Fed. (2d) 47. The tests for exemption under section 101 (7) are by this time clearly defined. The statute exempts business leagues not organized for profit and no part of whose earnings inures to the benefit of any private individual or shareholder.[2] By regulation persisting *290 through successive enactment of the statute, the corporation must not be engaged in any regular business of a kind ordinarily carried on for profit; and its activities must be directed to the improvement of business conditions generally of one or more lines of business, rather than the rendition of particular services for individuals. Recurrent enactment of the statute carries with it the administrative interpretation contained in the regulations. Retailers Credit Association of Alameda County, supra.
*291 The petitioner was during the taxable years engaged primarily in the business of reporting credit information for hire. In a lesser degree it supplies to its members information relative to building contracts. In a part of the fiscal year ending April 30, 1940, it was engaged in the business of a collection agency. For the balance of that year and during the succeeding year it rendered service of an undisclosed nature to a collection agency that had been organized to take over that part of its business. Clearly it was engaged in a regular business ordinarily carried on for profit during the taxable year. Adjustment Bureau of St. Louis Credit Ass'n, 21 B.T.A. 232; Northwestern Jobbers Credit Bureau v. Commissioner, 37 Fed. (2d) 880, affirming 14 B.T.A. 362; Durham Merchants' Ass'n v. United States, 34 Fed. Supp. 71. That it carried on other activities of a more general nature incidental to this preponderant activity does not vary the conclusion. Durham Merchants' Ass'n, supra;Northwestern Jobbers Credit Bureau, supra. *292 Moreover, the petitioner was not primarily engaged in the general improvement of business conditions in "one or more lines of business," but concerned itself with "particular services for individual persons." The services supplied were of a sort vital to its members in the operation of their business, which they would have been compelled to purchase elsewhere or supply themselves at a greater cost, but for the existence of the petitioner. We do not conceive the statute to extend exemption to an organization existing primarily for the convenience or economy of its members, but only to such organizations as are dedicated principally to a public or quesi-public purpose. Produce Exchange Stock Clearing Ass'n, Inc. v. Helvering, 71 Fed. (2d) 142, affirming 27 B.T.A. 1214, and cases cited therein. We do not believe th&t petitioner has established that it is a business league within the meaning of section 101 (7) of the Internal Revenue Code and the applicable Treasury Regulations, and it follows that the deficiency as determined must stand. Decision will be entered for the respondent. Footnotes
1. SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS. The following organizations shall be exempt from taxation under this chapter - * * * * *
(7) Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.↩
2. Regulations 103 - Sec. 19.101(7) - 1. Business leagues, chambers of commerce, real estate boards, and boards of trade. - A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league. * * *↩